AIRPORT AUTHORITY OF THE CITY OF MILLARD ET AL., APPELLANTS, V. CITY OF OMAHA, NEBRASKA, ET AL., APPELLEES, JOSEPHINE M. COLTON, INTERVENER-APPELLANT.

177 N. W. 2d 603

Filed June 5, 1970. No. 37437.

Stephen T. McGill and Lyle E. Strom of Fitzgerald, Brown, Leahy, McGill & Strom, for appellants.

Clayton H. Shrout of Shrout, Lindquist, Caporale, Brodkey & Nestle, for intervener-appellant.

Herbert M. Fitle, Seymour L. Smith, and Clarence A. H. Meyer, Attorney General, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ., and RONIN, District Judge.

SPENCER, J.

This is an action brought by the Airport Authority of the city of Millard, hereinafter called Authority, and William A. Nelson, a bondholder of the Authority, to have an ordinance of the city of Omaha annexing the city of Millard to the city of Omaha declared invalid and unconstitutional as impairing the obligations of Authority's contracts. The district court rejected the

contentions of plaintiffs, and they have perfected an appeal to this court.

This case was consolidated for trial with two other cases involving the annexation, but was briefed and argued separately in this court. The question of the right of the city of Omaha to annex the city of Millard, hereinafter called Millard, has been determined by the opinion in City of Millard v. City of Omaha, *ante* p. 617, 177 N. W. 2d 576, filed with this opinion. By virtue of that opinion, the annexation of Millard has been upheld and is no longer an issue herein. We are here concerned only with the effect the annexation of Millard has on Authority, and specifically whether it constitutes an impairment of the obligations and contracts of Authority.

It is appellants' position that Millard and Authority are separate public entities and that the annexation statutes are not broad enough to include Authority. In Lock v. City of Imperial, 182 Neb. 526, 155 N. W. 2d 924, we held: "An airport authority, duly created by a city under the Cities Airport Authorities Act, is a supplementary, separate, and independent public corporation, and the parent municipal corporation is not liable for the torts of the authority." The statute creating Authority, section 3-502, R. S. Supp., 1967, provides in part: "Each such board shall be a body corporate and politic, constituting a public corporation and an agency of the city for which such board is established." As is apparent from the statute creating Authority, while it is a separate public corporation it is also an agency of the city by which it is established. Authority has existence only because it was created by Millard. It is an agency of that city and the title to its real property is held in the name of Millard. The city of Omaha, by virtue of the annexation, succeeds to all rights and property of every kind, as well as all obligations of Millard. § 14-118, R. R. S. 1943.

The power of annexation is not thwarted because a

part of the territory annexed is also a part of the territory of a public corporation formed for a limited purpose. In City of Bellevue v. Eastern Sarpy County Suburban Fire Protection Dist., 180 Neb. 340, 143 N. W. 2d 62, we held: "Generally, a city may annex territory that is also a part of the territory of a district or public corporation formed for a limited purpose." Definitely, Authority is organized for a limited purpose. It was organized for the specific purpose of developing an airport facility. The statute, section 3-502, R. S. Supp., 1967, gives it a limited existence of 20 years or thereafter until its obligations are paid, after which it ceases to exist, and its property passes to the city by which it was established.

Obviously, the intent of the Cities Airport Authorities Act is to permit a city to acquire airport facilities without obligating the city beyond the extent provided by the act, which was a maximum levy of 1 mill annually. It clearly was not the intent to permit a city under 10,000 population to avoid annexation by creating an airport authority. We must resolve the questions herein in the light of the fact that Authority has existence only because it was created by Millard and is an agency of that city. Its existence is dependent upon Millard, and not vice versa.

We should not give an interpretation to a statute which would have the effect of nullifying another statute when obviously that was not the clear legislative intent. As we said in Lang v. Sanitary Dist., 160 Neb. 754, 71 N. W. 2d 608: "In enacting a statute, the Legislature must be presumed to have had in mind all previous legislation upon the subject. In the construction of a statute, courts must consider the preexisting law together with any other laws relating to the same subject, which, although enacted at different times, are in pari materia therewith.

"When the Legislature subsequently enacts legislation making related preexisting laws applicable thereto,

it will be presumed that it did so with full knowledge of such preexisting legislation and the judicial decisions of this court construing and applying it."

Section 14-118, R. R. S. 1943, so far as material herein, provides: "The date of annexation or merger shall be set forth in the ordinance providing for the same, and after said date the metropolitan city shall succeed to all the property and property rights of every kind, contracts, obligations, and choses in action of every kind held by or belonging to the city or village annexed or merged with it, and the metropolitan city shall be liable for and recognize, assume, and carry out all valid contracts, obligations and licenses of any city or village so annexed or merged with the metropolitan city. Any city or village so merged or annexed with the metropolitan city shall be deemed fully compensated by virtue of such annexation or merger and assumption of its obligations and contracts, for all its properties and property rights of every kind acquired as aforesaid by the metropolitan city; * * *."

Appellants argue that section 14-118, R. R. S. 1943, applies specifically to cities or villages, and that Authority, not being mentioned, is not included within the ambit of said section. As suggested before, the annexation of Millard included the annexation of Authority.

We determine that the existence of Authority had no effect on the annexation of Millard, nor do we find any impairment of the obligations and contracts of Authority by such annexation. Without question, by section 3-509, R. R. S. 1943, the Legislature intended that an airport authority would be a separate entity financially independent of the city creating it. This, however, was done to avoid liability on the part of the city, and was premised on the continued existence of the authority until all its debts were paid and its property passed to the city creating it. It is also evident that the sole purpose of section 3-508, R. R. S. 1943, was to protect the sources of income of an authority, to insure the

eventual payment of outstanding bonds. It is a covenant by the state attempting to guarantee the authority bondholders that their rights would be protected.

Just as obviously, the legislative intent was that the debts of Authority were not and could not become the debts of Millard. Those debts were to be paid by the method provided by the Cities Airport Authorities Act. The annexation of Millard eliminated the city which brought Authority into existence. However, the annexation of Millard also included Authority, so section 14-118, R. R. S. 1943, is effective to carry out the legislative intent. By operation of law then, the debts of Millard and Authority became the debts of the city of Omaha. This effectuates the intent of section 3-508, R. R. S. 1943, to protect the rights of the holders of Authority's bonds. By virtue of section 14-118, R. R. S. 1943, property of as well as the obligations of Authority became and now are the property and the obligations of the city of Omaha. This result eliminates any possibility of an impairment of contractual obligations.

What we said in State ex rel. Parks Co. v. Dahlman, 100 Neb. 416, 160 N. W. 117, is pertinent herein: " 'And the metropolitan city shall succeed to all the property and property rights of every kind, contracts, obligations and choses in action of every kind held by or belonging to the city or village consolidated with it, and the metropolitan city shall be liable for and recognize. assume and carry out all valid contracts, obligations, franchises and licenses of any such city or village so consolidated with it.'

"The foregoing language indicates very clearly that the consolidated city receives the property, property rights. and every kind of contract or obligation or chose in action held by the city or village consolidated with the metropolitan city. It also clearly shows that the metropolitan city, in addition to receiving the property of the village or city incorporated with it, assumes to carry out all valid contracts, obligations, franchises and

licenses of the city or village consolidated with it. If the city of South Omaha had incurred an obligation by reason of what it did, then it is incumbent upon the city of Omaha to carry out the contract or obligation, whatever it may have been."

This now presents the question raised by intervener, Josephine M. Colton, who is also an appellant herein. We agree with her that as a taxpayer in the city of Omaha, in common with other taxpayers, she will bear some of the burden of retiring the indebtedness of Authority. That fact, however, is not sufficient to permit intervention herein. Section 14-117, R. R. S. 1943, provides that the city council may at any time extend the corporate limits of a metropolitan city. There is no restriction on this right when properly exercised. When proper procedures are followed, taxpayers have no right to intervene in legal actions involved by annexation proceedings.

The judgment of the district court is affirmed.

AFFIRMED.