IN RE HILBERS PROPERTY FREEHOLD TRANSFER. DENNIS L. HILBERS ET AL., APPELLANTS AND CROSS-APPELLEES, V. SCHOOL DISTRICT NOS. 26 AND 94, APPELLEES, CONNIE J. MARREEL, INTERVENOR, CROSS-APPELLANT.

318 N.W.2d 265

Filed April 16, 1982. No. 43874.

James B. Gessford of Perry, Perry, Witthoff,

Guthery, Haase & Gessford, P.C., for appellants Hilbers et al.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman & Thomsen, for appellees and intervenor.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

This is an appeal from an order of the District Court for Dodge County reversing an order of the freehold board provided for by Neb. Rev. Stat. § 79-403 (Reissue 1976), which transferred a 160-acre tract of land from school district Nos. 94 and 26, Dodge County, Nebraska, to school district No. 62, Dodge County. District No. 94 is a Class VI district. District No. 26 is a Class I district. District No. 62 is a Class III district. The Hilbers, petitioners before the board and the appellants in this court, sought the transfer, claiming it to be in the best educative interests of their child.

After the board granted the petition and transfer of the land, district Nos. 94 and 26 appealed to the District Court. In the District Court the Hilbers challenged the standing of the two school districts to appeal from the order of the board. After the time for appeal to the District Court had passed, the appellee Marreel, also a cross-appellant here, filed a petition in intervention asserting her claimed right to appeal the order of the board.

The District Court struck the petition in intervention, overruled the Hilbers' objection to the standing of district Nos. 94 and 26, and, after a hearing on the merits, reversed the action of the board. The Hilbers then appealed to this court, and Marreel filed a cross-appeal.

The assignments of error made by the Hilbers raise the following issues in this court: (1) Whether a school district has standing to appeal an order of

the freehold board made under the provisions of § 79-403, and (2) Whether the trial court's ruling on the merits was erroneous. The cross-appeal argues Marreel has a right to intervene in the District Court and asserts her so doing saves the appeal even though the standing issue is determined adversely to the school districts.

In *Hinze v. School Dist. No. 34,* 179 Neb. 69, 136 N.W.2d 434 (1965), and a number of earlier cases this court held that a school district may not maintain an action involving a change in boundaries of the school district, and has no legal interest in maintaining the boundaries of the district. That case involved a transfer of land pursuant to a freeholder's petition. We affirmed the above-stated principle which had been announced in earlier cases, but held that since an issue of the want of capacity to sue had not been raised in the trial court, the right to challenge on that ground had been waived. We then reversed on other grounds.

The appellee school districts urge that since *Hinze v. School Dist. No. 34, supra,* and its predecessors were decided, statutory changes have been made which allow school district participation in territorial changes in certain cases and that this results in giving standing even in other cases including transfers initiated by freeholders' petitions. Among the statutory changes upon which the school districts rely are Neb. Rev. Stat. §§ 79-403.02 and 79-403.03 (Reissue 1976). Section 79-403.02 provides that, notwithstanding the other provisions of Chapter 79 concerning the transfer of territory, territory may be transferred to a Class I district when ''(1) The receiving district contains at least twenty-five hundred acres and located thereon is a nonprofit facility licensed for the care and education of children;

''(2) There are no children of school age in the territory to be transferred to the receiving district and the territory is owned by the owners of the facility

referred to in subdivision (1) of this section; and

"(3) As a part of the proposal for transfer, the board of the receiving district agrees to provide elementary education either in its own facilities or by contracting with another district; *Provided,* that no county shall pay tuition for any nonresident who is a ward of the court or state." Section 79-403.03 provides that a proposal for the transfer of territory under the above statute shall be initiated by the receiving district.

Other statutory changes upon which the appellee school districts rely are contained in Neb. Rev. Stat. §§ 79-402.03, 79-402.04, 79-402.05, and 79-402.06 (Reissue 1976). These statutes provide for changes in the boundaries of school districts and for merger of school districts by methods in addition to that provided for by Neb. Rev. Stat. § 79-402 (Reissue 1976). The latter statute provides for changes upon petition of 65 percent of the legal voters of each district affected.

Section 79-402.03 provides: "In addition to the petitions of legal voters pursuant to section 79-402, changes in boundaries or the creation of a new district from other districts may be initiated and accepted by:

"(1) The board of education of any Class III, IV, V, or VI district; and

"(2) The board of education of any Class I or II district in which is located a city or incorporated village."

Section 79-402.04 provides: "When the legal voters of a Class I or II school district in which no city or village is located petition to merge in whole or in part with a Class I or Class II district, such merger may be accepted by petition of the board of education of the accepting district."

Section 79-402.05 provides: "When the legal voters of a Class I school district petition to merge with a Class I district with a six-member board of

education, such merger may be accepted by petition of the board of education of the accepting district."

And § 79-402.06 provides: ''Petitions presented pursuant to sections 79-402.03 to 79-402.05 shall be subject to the same requirements for content, hearings, notice, review, and appeal as petitions submitted pursuant to section 79-402.''

The school districts acknowledge that the freeholder statute, § 79-403, does not make any mention of permitting school districts as corporate entities to involve themselves in changes made under the provisions of that statute. However, the districts argue that because the statutes above mentioned grant districts the right to initiate or otherwise participate in certain cases and because § 79-402 (which provides for changes upon petitions signed by 65 percent of the voters of each affected district) gives the right of appeal to any person affected, the right of a school district to appeal from an adverse decision under § 79-403 must be inferred.

We do not accept the districts' arguments for the following reasons. First, it is not at all clear that the above statutory changes give school districts the right to appeal orders transferring property made upon petition of the legal voters pursuant to § 79-402. In any event, that question is not before us, and we cannot decide it in this case. More important, however, is the fact that § 79-403 has not been changed in any way which purports to give the affected school districts the right to appeal in cases of transfers by freeholders' petitions which involve only the property of the petitioners.

The basis for our earlier holdings on the lack of standing of school districts was simply that the statutes made no provision for such authority. From the fact that the Legislature has now given school districts participation in certain cases, one cannot infer an intention to give such capacity in all cases where territorial boundaries of a school district are

affected. Quite the contrary may be inferred by applying certain principles of statutory interpretation.

In circumstances such as this, certain presumptions are used by the courts as an aid in statutory construction. In enacting amendatory legislation, the Legislature is presumed, unless it appears to the contrary, to have known the preexisting state of the law. *State v. Suhr,* 207 Neb. 553, 300 N.W.2d 25 (1980). Also presumed is the Legislature's knowledge of the judicial decisions of the Supreme Court construing and applying that law. *Sidney Education Assn. v. School Dist. of Sidney,* 189 Neb. 540, 203 N.W.2d 762 (1973); *Airport Authority of City of Millard v. City of Omaha,* 185 Neb. 623, 177 N.W.2d 603 (1970). Since the Legislature made no pertinent changes in § 79-403, we assume it did not intend to change the law as it relates to the capacity of a school district to bring suit, except in those cases where they may have done so.

We now address whether the Marreel petition in intervention filed after the time for appeal had expired sustained the appeal in the District Court and hence preserved the court's jurisdiction. It is clear the only purpose of the Marreel petition in intervention was to sustain the appeal in the event the school districts lacked standing in their appeal from the action of the freehold board.

The petition in intervention pled the steps which had been taken by the school districts to appeal. It then alleged the intervenor was a resident and taxpayer residing in school district Nos. 94 and 26 and "[t]he transfer of property ordered by the freehold board as set forth herein was contrary to law." Finally, in its prayer for remedy, it requested the court to set a time and place for hearing the appeal and at said hearing to reverse the freehold board's order.

Accompanying the petition in intervention was an "offer" by the intervenor and the school districts "to

amend the appeal bond filed herein as to form, amount, or parties in such manner as the court may order pursuant to a request of any party herein."

In her cross-appeal in this court the intervenor argues only three points: (1) The notice of appeal by the districts gave notice to the petitioners of the appeal. (2) A bond timely filed may be amended. We note here parenthetically that although not so expressly stated, the proposed amendment is apparently to substitute the intervenor as principal and to either have a new surety or the original surety, a bonding company, accept the intervenor as principal, although there is no showing that the corporate surety would do so. (3) If the school districts lacked standing, that fact did not deprive the District Court of jurisdiction.

The intervenor cites no authority which would allow "amendment" of a bond by a substitution of a new principal and a new surety. The intervenor relies upon *Reiber v. Harris,* 179 Neb. 582, 139 N.W.2d 353 (1966). This court in that case stated, after holding the filing of the bond was jurisdictional, a bond timely filed and approved could be amended if defective. There are numerous cases decided by this court which indicate that the rules permitting amendment of appeal bonds are quite liberal. See, e.g., *The Exchange Bank v. Mid-Nebraska Computer Services, Inc.,* 188 Neb. 673, 199 N.W.2d 5 (1972). *Reiber v. Harris, supra,* does not stand for the principle that an entirely new bond may be substituted, which in effect is what the substitution of a new principal (a tardy appellant) and surety would constitute.

An analysis of the procedural facts in this case indicates that the real issue is not the right to amend a defective bond, but whether an intervenor may, after the time for appeal has expired, become a substitute appellant for an appellant who has no standing. The appellees do not cite any case on point,

and the court's own exhaustive search has disclosed no precedents which are directly on point.

A taxpayer has a right to appeal from a decision of the freehold board granting the transfer. *Reiber v. Harris, supra.* If a taxpayer has taken a timely appeal, we can conceive of no circumstances where there would be any need for any other taxpayer to intervene. This is not to be taken as saying that another taxpayer could not intervene.

The trial court granted the school districts' requested relief which the intervenor now, as an appellee in this court, seeks to preserve. If the school districts had not appealed from the decision of the freehold board, would Marreel have had a right to enter the case after the time for appeal had elapsed? The answer, we believe, is obviously not. The appeal would simply have been untimely. It is clear that Marreel seeks status not as an intervenor in the action, but as an appellant in the District Court.

Somewhat similar to the present case is that of *Parker v. City of Grand Island,* 115 Neb. 892, 215 N.W. 127 (1927). In that case the plaintiffs sought to enjoin the paving of streets in a paving district because of improper notice of the district's creation. R. E. Davis et al. intervened, challenging the plaintiffs' right to maintain the action for injunctive relief. The District Court granted the injunction. Neither the plaintiffs nor the defendant City of Grand Island appealed to the Supreme Court; however, the intervenors did appeal. This court said: "The preliminary question before us is, as between the plaintiffs and the interveners, the right of the latter in the present case to challenge the right of the former to maintain their action." 115 Neb. at 893, 215 N.W. at 127. We held that under the circumstances the intervenors were mere interlopers.

An intervenor who is not an indispensable party cannot change the position of the original parties or change the nature and form of the action or the is-

sues presented therein. *State ex rel. Nelson v. Butler,* 145 Neb. 638, 17 N.W.2d 683 (1945).

We hold that in an appeal to the District Court from an action of a freehold board transferring land from one school district to another, where the party appealing the action of the board has no standing to make such an appeal, an intervenor entering the action after the time for appeal has elapsed may not be substituted as an appellant.

REVERSED AND REMANDED WITH DIRECTIONS TO REINSTATE THE ORDER OF THE FREEHOLD BOARD.