STATE OF NEBRASKA, APPELLEE, V. BILL D. NULL, APPELLANT.
526 N.W.2d 220

Filed January 13, 1995.   No. S-93-364.

James P. Miller, of Miller & Addison, for appellant.

Don Stenberg, Attorney General, Marilyn B. Hutchinson, and Mark D. Starr for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and GRANT, J., Retired.

LANPHIER, J.

Bill D. Null was convicted of attempted bribery and conspiracy to commit bribery following a jury trial in the district court for Sarpy County. The issue was whether Null and an accomplice, Barry Vogel, tried to bribe Papillion's mayor to obtain the city's keno operation. Null and Vogel were tried together. Null appealed to the Nebraska Court of Appeals, which affirmed his convictions. Null asserted that the Court of Appeals erred with respect to his bribery conviction by applying the wrong bribery statute, in determining that the trial court correctly determined that misdemeanor attempted bribery is a lesser-included offense of bribery, and in finding that Null offered to confer any benefit on Mayor Pete Goodman. With respect to his conspiracy conviction, Null asserts the Court of Appeals erred in overturning his coconspirator's conviction and not his, leaving a "conspiracy of one," and in affirming the trial court in (1) not dismissing the felony conspiracy charge against Null when the bribery charge was reduced to a misdemeanor and (2) finding there was an overt act in furtherance of the conspiracy. Lastly, Null contends that he should have been granted a continuance by the trial court because of the late production of evidence. We granted Null's petition for further review and affirm the holdings of the Court of Appeals.

## I. BACKGROUND

On May 12, 1992, citizens of Papillion, Nebraska, voted to allow the city of Papillion to initiate a keno-type lottery in the city. During April and May 1992, Bill D. Null and Barry Vogel allegedly attempted to influence Papillion Mayor Pete Goodman to award the city's keno operation. Null and Vogel were charged with bribery in violation of Neb. Rev. Stat. § 28-917(1)(a) (Reissue 1989), a Class IV felony, and with conspiracy to commit bribery in violation of Neb. Rev. Stat. § 28-202(1) (Reissue 1989), also a Class IV felony. Null and Vogel were jointly tried in the district court for Sarpy County, Nebraska. At the close of the State's case, the trial court determined as a matter of law that the crime of bribery had not been committed because the evidence failed to establish that Mayor Goodman had actually been influenced by Null and Vogel. However, the

trial court submitted to the jury what it determined to be the lesser-included offense of attempted bribery, a misdemeanor. The jury found Null guilty of attempted bribery and conspiracy to commit bribery. Vogel was found not guilty of attempted bribery, but guilty of conspiracy to commit bribery. Null and Vogel each timely perfected an appeal to the Court of Appeals, and the cases were consolidated for argument and disposition. The Court of Appeals affirmed Null's convictions. *State v. Null*, 94 NCA No. 20, case No. A-93-364 (not designated for permanent publication). In a separate opinion, the Court of Appeals reversed Vogel's conviction and remanded the cause for further proceedings because the trial court improperly refused to allow Vogel to present character evidence on his own behalf. *State v. Vogel*, 94 NCA No. 20, case No. A-93-365 (not designated for permanent publication). Null petitioned this court for further review of the Court of Appeals' affirmance of his convictions. We affirm. Additionally, the State petitioned for further review of the Court of Appeals' reversal of Vogel's conviction. We address the State's assignments of error in *State v. Vogel, post* p. 209, 526 N.W.2d 80 (1995).

## II. ASSIGNMENTS OF ERROR

### 1. BRIBERY CONVICTION

Null asserts that the Court of Appeals erred in affirming his attempted bribery conviction by (1) concluding that § 28-917, a felony, was the applicable bribery statute, rather than Neb. Rev. Stat. § 49-14,101 (Reissue 1993), a misdemeanor; (2) failing to overturn the trial court's reduction of the felony bribery charge to attempted bribery as a lesser-included offense and continuing with trial; and (3) finding that Null offered to confer a benefit upon Mayor Goodman in exchange for his influence as required by § 28-917.

### 2. CONSPIRACY CONVICTION

Null further asserts that the Court of Appeals erred in affirming his conspiracy conviction by (1) overturning the conviction of Null's coconspirator, Vogel, leaving Null "with the felony conviction of conspiracy of one"; (2) concluding that the trial court was not required to dismiss the felony conspiracy charge when it reduced the felony bribery charge to attempted

bribery, a misdemeanor; and (3) finding that Null committed an overt act in furtherance of the conspiracy.

### 3. REFUSAL TO GRANT A CONTINUANCE

Finally, Null assigns as error the Court of Appeals' order affirming the trial court's refusal to grant a continuance due to the State's failure to disclose certain tapes of conversations involving Null and Vogel until just prior to trial.

## III. STANDARDS OF REVIEW

The question of whether the felony bribery statute was repealed by implication by the enactment of the misdemeanor bribery statute is a question of statutory interpretation. Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the courts below. *Rigel Corp. v. Cutchall*, 245 Neb. 118, 511 N.W.2d 519 (1994); *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994).

In reviewing a criminal conviction, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence. Such matters are for the finder of fact, and the verdict must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994); *State v. Hand*, 244 Neb. 437, 507 N.W.2d 285 (1993).

In considering Null's assignment of error regarding delayed disclosure of the tape-recorded conversations, we recognize that a trial court is vested with broad discretion in considering discovery requests of defense counsel, and error can be predicated only upon an abuse of discretion. See, *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992); *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990).

## IV. ASSIGNMENTS OF ERROR REGARDING BRIBERY CONVICTION

### 1. IS BRIBERY A MISDEMEANOR OR A FELONY?

Nebraska has enacted two bribery statutes: §§ 28-917 and 49-14,101. Both statutes criminalize the act of offering

something of value in order to influence a public official's actions. However, violation of § 28-917 is a Class IV felony, while violation of § 49-14,101 is a Class III misdemeanor.

Null was charged with bribery in violation of § 28-917(1)(a). Null argues that § 28-917 was repealed by implication by the subsequent enactment of § 49-14,101 and that, therefore, he cannot be guilty of an offense greater than a misdemeanor.

A statute may be repealed by implication when a new law contains provisions which are contrary to, but do not expressly repeal, the provisions of the former law. 1A Norman J. Singer, Statutes and Statutory Construction § 23.09 (5th ed. 1993).

> While repeals of statutes by implication are not favored and a statute will not be considered so repealed unless the repugnancy between the new enactment. and the former statute is plain and unavoidable, where such a repugnancy exists, the new enactment will be deemed to have repealed the former statute by implication. *State v. Retzlaff*, 223 Neb. 811, 394 N.W.2d 295 (1986); *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986). However, a construction of a statute which, in effect, repeals another statute will not be adopted unless such a construction is made necessary by the evident intent of the Legislature. *State v. Roth, supra*; *Sarpy Co. Pub. Emp. Assn. v. County of Sarpy*, 220 Neb. 431, 370 N.W.2d 495 (1985). Nonetheless, a legislative act which is complete in itself and is repugnant to or in conflict with a prior law repeals the prior law by implication to the extent of the repugnancy or conflict. *American Fed. S., C. & M. Emp. v. County of Lancaster*, 200 Neb. 301, 263 N.W.2d 471 (1978).

*State v. Fellman*, 236 Neb. 850, 857-58, 464 N.W.2d 181, 187 (1991).

In addressing Null's argument, the Court of Appeals stated correctly that the doctrine of repeal by implication requires an initial determination of which statute is the former enactment and which is the new enactment. We note that the doctrine of repeal by implication also requires a determination of whether the provisions of the new statute are plainly and unavoidably repugnant to the provisions of the former statute. *Fellman, supra*. In determining whether the new enactment is repugnant,

we look at the new enactment for any indication of an evident legislative intent to repeal the former statute.

The misdemeanor bribery statute, § 49-14,101, is part of the Nebraska Political Accountability and Disclosure Act, Neb. Rev. Stat. § 49-1401 et seq. (Reissue 1993). Section 49-14,101 provides in pertinent part:

> (1) No person shall offer or give to the following persons anything of value, including a gift, loan, contribution, reward, or promise of future employment, based on an agreement that the vote, official action, or judgment of any public official, public employee, or candidate would be influenced thereby . . . .

For the purposes of the Nebraska Political Accountability and Disclosure Act, a public official is defined to mean an elected official in the executive or the legislative branch, or an elected or appointed official in the judicial branch of the state government or a political subdivision thereof. § 49-1443. Therefore, § 49-14,101 could be applicable to the alleged conduct of Null and Vogel.

The felony bribery statute, § 28-917, provides in pertinent part:

> (1) A person commits bribery if:
>
> (a) He offers, confers, or agrees to confer any benefit upon a public servant or peace officer with the intent to influence that public servant or peace officer to violate his public duty, or oath of office, thereby influencing the public servant's or peace officer's vote, opinion, judgment, exercise of discretion, or other action or inaction in his official capacity . . . .

The term "public servant" as used in the Nebraska Criminal Code includes any officer or employee of government, whether elected or appointed. Neb. Rev. Stat. § 28-109(18) (Reissue 1989). Therefore, § 28-917 is also applicable to Null and Vogel's alleged conduct.

In its opinion, the Court of Appeals determined that § 28-917 is the newer statute. The misdemeanor statute, § 49-14,101, was enacted in 1976. The felony statute, § 28-917, was enacted in 1977. However, § 49-14,101 has been amended four times since its enactment in 1976. The first amendment involved the

substitution of the words "Class III misdemeanor" for specific penalty language. 1977 Neb. Laws, L.B. 41, § 55. The second amendment applied only to county purchasing agents. 1983 Neb. Laws, L.B. 370, § 22. The third amendment partially removed members of the Legislature from exposure to criminal sanctions under § 49-14,101. 1986 Neb. Laws, L.B. 548, § 14. Finally, and subsequent to Null's trial, § 49-14,101 has been revised in a manner not relevant to this case. 1994 Neb. Laws, L.B. 1243, § 13.

These amendments may make § 49-14,101 the newer statute for purposes of the doctrine of repeal by implication, but the amendments to that statute do not indicate that the Legislature intended to repeal § 28-917. We agree with the Court of Appeals. Both statutes criminalize an individual's offering a benefit of something of value to attempt to influence a mayor's conduct in the course of his or her official duties. However, there are important differences between the statutes. For example, § 28-917 requires that a public servant or peace officer be actually influenced by a defendant's attempt, whereas § 49-14,101 does not. Section 49-14,101 applies to candidates, while § 28-917 applies only to those already in office.

Repeals by implication are strongly disfavored. *State v. Retzlaff*, 223 Neb. 811, 394 N.W.2d 295 (1986); *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986). There is nothing in the plain meaning of either § 28-917 or § 49-14,101 to indicate that the Legislature intended to bring about a repeal by implication as urged by Null. The statutes are not so repugnant to each other as to cause the type of conflict which requires a court to determine that a statute has been repealed by implication. Both bribery statutes are in effect.

### 2. NULL WAS PROPERLY CHARGED WITH FELONY BRIBERY RATHER THAN MISDEMEANOR BRIBERY

The fact that two statutes, one a felony statute and the other a misdemeanor, may apply to Null's alleged conduct does not provide grounds for reversal of Null's convictions. "It is not uncommon for an act to constitute a violation of more than one crime, some of which may be lesser-included offenses and some of which may be separate and distinct." *Roth*, 222 Neb. at 122,

382 N.W.2d at 351. As in *Roth*, this is simply a situation wherein a set of facts is sufficient to constitute the violation of one of several crimes. When a single act violates more than one statute, a prosecutor is free to choose to prosecute under any applicable statute so long as the selection is not deliberately based upon any unjustifiable standard such as race, religion, or other arbitrary classification. *State v. Willett*, 233 Neb. 243, 444 N.W.2d 672 (1989); *Roth, supra*; *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985).

As noted by the Court of Appeals, neither Null nor Vogel alleges that the prosecution relied upon any unjustifiable standard in determining to charge under the felony statute, § 28-917. Therefore, no error can be predicated on the fact that Null was charged with felony bribery. We therefore can find no error in the State's charging of Null with felony bribery rather than misdemeanor bribery.

### 3. Trial Court Acted Properly by Reducing Charge to Attempted Bribery and Continuing with Trial

At the close of the State's case, Null moved to dismiss because of the prosecution's failure to prove a prima facie case establishing bribery and conspiracy to commit bribery. Vogel also moved to dismiss both counts for the reason that the State failed to introduce evidence on each and every element. The trial court took the motions under advisement after indicating that it was inclined to agree that the bribery charge would probably "go out the window" because of the lack of evidence showing that Mayor Goodman had actually been influenced in some fashion by Null or Vogel. The trial court stated that the lesser-included offense of attempted bribery still remained. Ultimately, the trial court submitted the case to the jury on the basis of attempted bribery as a lesser-included offense over Null's objections. Null argued that the case had been tried before the jury on the issue of bribery. He therefore urges that to have it changed by the trial court to attempted bribery was a disadvantage because he was far more likely to be convicted of attempted bribery than bribery.

Null assigns as error the trial court's reduction of the felony bribery charge to attempted bribery as a lesser-included offense

and continuance of the trial. Null's argument is premised on Neb. Rev. Stat. § 29-2018 (Reissue 1989). Section 29-2018 provides:

> When it shall appear at any time before the verdict that a mistake has been made in charging the proper offense, the accused shall not be discharged if there appears to be good cause to detain him in custody; but the court must recognize him to answer to the offense on the first day of the next term of such court, and shall, if necessary, likewise recognize the witnesses to appear and testify.

Section 29-2018 permits a trial judge to discharge a defendant or recognize him to appear at the next term of court in the event of a formal defect in the information which cannot be remedied in conformity with the evidence. See *State v. Kendall*, 38 Neb. 817, 57 N.W. 525 (1894). Null argues that the trial court was required to drop the charge and recognize him to answer to the offense of attempted bribery at its next term.

In *State v. Foster*, 230 Neb. 607, 433 N.W.2d 167 (1988), we addressed the question of what happens when the State fails to submit enough evidence to make a prima facie case for the crime charged. In *Foster*, the defendant argued that the trial court must direct a verdict as a matter of law. We disagreed and held that where the State fails to demonstrate a prima facie case on the crime charged, but does so on a lesser-included offense, the trial court in its discretion may direct a verdict on the crime charged and submit the evidence to the trier of fact for consideration on the lesser-included offense.

To constitute a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). In determining whether a lesser offense is indeed a lesser-included one, a court initially does not look to the evidence in a particular case, but looks only to the elements of the criminal offense.

It is the duty of the trial court to instruct the jury as to the law applicable to the case. *White, supra*. The trial court may instruct a jury, over a defendant's objection, on any lesser-

included offenses supported by the evidence and the pleadings. *Id.*; *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986). The trial court acted properly by continuing with trial and by instructing the jury on the lesser-included offense of attempted bribery.

### 4. Offer of Valuable Consideration

Section 28-917 prohibits conferring or offering to confer "any benefit" upon a public servant with the intent to influence that public servant and thereby influencing the public servant's actions in his official capacity. Null argues that the trial court erred in finding that he offered to confer a benefit upon Mayor Goodman in exchange for his influence.

Null argues in his brief that he gave no money to Mayor Goodman, but merely offered him an interest in a corporation to be formed that would bid on the Papillion city keno lottery. Null and Vogel offered to sell the mayor a one-third share of the corporation in exchange for $1 and his influence over the award of the keno franchise.

Null states that § 49-14,103.01(3) allows a city servant to have an interest in a contract to which the city is a party provided he makes a declaration on the record to the governing body responsible for approving the contract. In essence, Null argues that because it would be possible for Mayor Goodman to obtain a legal interest in the keno business, the offer of a share of that business was not an offer to confer a benefit upon the mayor.

Even if § 49-14,103.01(3) applied and it would have been possible for Mayor Goodman to have "legalized" his interest in the keno corporation, it would not deprive Null's offer to the mayor of its character as an attempted bribe. Null's offer of something of benefit was intended to influence the mayor in his official capacity. Such offer was an attempted bribe. § 49-14,103.01(3) cannot be read to condone, legalize, or sanitize attempted bribery of a public official. Null offered something of value in exchange for the mayor's influence and thereby violated § 28-917.

## V. ASSIGNMENTS OF ERROR REGARDING CONSPIRACY CONVICTION

### 1. CONSPIRACY OF ONE

The Court of Appeals reversed Vogel's conspiracy conviction and remanded the cause for further proceedings. *State v. Vogel*, 94 NCA No. 20, case No. A-93-365 (not designated for permanent publication). In his petition for further review, Null asserts that he is now left with a felony conspiracy of one, relying on *State v. John*, 213 Neb. 76, 328 N.W.2d 181 (1982).

The Court of Appeals reversed Vogel's conviction because the trial court refused to allow two character witnesses to testify on Vogel's behalf. Null argues that the character evidence on behalf of Vogel would have created doubt as to whether Vogel was a party to any agreement. Null further argues that if Vogel was not a party to an agreement, then there could have been no conspiracy because conspiracy requires an agreement between two or more persons, but not a conviction of two or more persons. Null goes on to argue that if Vogel did not make an agreement, then Null had no other person with whom to agree, and without such an agreement, there can be no conspiracy.

The principal element of a conspiracy is an agreement or understanding between two or more persons to commit a wrong. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). In *John, supra*, we determined that in adopting § 28-202 in 1977, the Legislature adopted the unilateral approach to conspiracy. We noted that one consequence of the unilateral approach is to make it immaterial to the guilt of a conspirator whose culpability has been established that the other person or all of the other persons with whom he conspired have not been or cannot be convicted. In fact, a person can be found guilty of conspiracy when his or her sole coconspirator has not even been charged with conspiracy. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991). Under the unilateral approach, only the defendant need agree with another person; the second party can feign the agreement. When the person with whom the defendant conspired secretly intends not to go through with the plan, the culpable party's guilt is not affected by the fact that the other party feigned agreement with the conspiracy. *John, supra*.

Even if we assume that the Court of Appeals' reversal of Vogel's conviction negates any proof of an agreement between Null and Vogel, Null is not left with a conspiracy of one. Null ignores the presence of a third party: Mayor Goodman. Under the unilateral approach to conspiracy, Null's conspiracy conviction could rest on his own actions coupled with Mayor Goodman's feigned agreement. Therefore, Null's argument that he stands convicted of a conspiracy of one necessarily fails.

## 2. FAILURE TO PROVE PREDICATE FELONY DOES NOT REQUIRE DISMISSAL OF CONSPIRACY CHARGE

Section 28-202 states that a person shall be guilty of criminal conspiracy if he or she acts with intent to promote or facilitate the commission of a *felony*. Null asserts that if he had been properly charged with a misdemeanor under § 49-14,101, no conspiracy charge could have been filed because no felony would have been charged. We have already determined that Null was properly charged with felony bribery. Therefore, his conspiracy charge was predicated upon a felony charge.

Alternatively, Null argues that the trial court was required to dismiss the felony conspiracy charge when it reduced the felony bribery charge to attempted bribery, a misdemeanor. The trial court did so because the State failed to establish one of the requisite elements of felony bribery, which is a showing that the public servant was actually influenced by the bribe. See § 28-917.

Bribery in violation of § 28-917 is a Class IV felony. When the crime attempted is a Class IV felony, the crime of attempting to commit such Class IV felony is a Class I misdemeanor. Neb. Rev. Stat. § 28-201(4)(d) (Reissue 1989). Accordingly, when the trial court indicated that it was considering reducing the felony bribery charge to attempted bribery, a misdemeanor, Null and Vogel argued that the felony conspiracy charge failed as well because it was predicated upon a misdemeanor.

The Court of Appeals rejected Null's argument and noted that the point of the conspiracy statute is to strike at an agreement to commit a felony. Under § 28-202, proof of an overt act is required, but successful commission of the felony is not. The fact that Mayor Goodman was not actually influenced

by Null's actions precluded Null's conviction for felony bribery, but not necessarily Null's conviction for conspiracy to commit felony bribery.

### 3. Overt Act in Furtherance of the Conspiracy

A person shall be guilty of criminal conspiracy if he or another person with whom he conspired commits an overt act in pursuance of the conspiracy. § 28-202(1)(b). Null asserts that the evidence was not sufficient to support a finding that he committed an overt act in furtherance of a conspiracy to commit bribery. In regard to the overt act requirement of § 28-202, we have stated:

> " '[A]n overt act, as something done pursuant to a conspiracy, tends to show a preexisting conspiracy and manifests an intent or design toward accomplishment of a crime. . . . An overt act, by itself, need not have the capacity to accomplish the conspiratorial objective and does not have to be a criminal act.' "

*State v. Anderson*, 229 Neb. 427, 435, 427 N.W.2d 764, 770 (1988), quoting *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987).

As here, conspiracies frequently involve intricate situations and complex acts which make it difficult to establish by direct proof a conspiracy or conspiratorial intent. See *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). Circumstantial evidence may establish the existence of a conspiracy or the criminal intent necessary for a conspiracy. *Id*. Intent may be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his or her conduct. *Anderson, supra*; *State v. Ladehoff*, 228 Neb. 812, 424 N.W.2d 361 (1988).

The overt act necessary to prove an intent to conspire can be silence which is designed to conceal the conspiracy. *Copple, supra*. In *State v. John*, 213 Neb. 76, 328 N.W.2d 181 (1982), we determined that the defendant's acts of giving a business card to a person whom he believed could find a hit man for him, in meeting with the hit man, and in furnishing him with the proposed victim's itinerary were overt acts with respect to a charge of conspiracy to commit a murder.

As the Court of Appeals noted, the bill of exceptions in this

matter consists of over 600 pages of testimony and many hours
of tape-recorded conversations. The evidence clearly established
that Null approached Mayor Goodman and offered one-third of
all profits and income of the keno operation in Papillion in
exchange for the mayor's assistance in making Null and Vogel
the keno franchisors. The mayor was to accomplish this by
appointing people to a nine-member keno committee that he
could "control" or "manipulate." The mayor would "put out the
word" that Null and Vogel were the ones with the "right ideas"
for the keno operation. Null and Vogel planned to establish a
corporation to run the keno operation, and the mayor would be
able to purchase a one-third share of the corporation for $1.
These overt acts are more than sufficient to establish that Null
acted pursuant to a conspiracy and manifest Null's intent to
bribe Mayor Goodman in order to ensure that he would be
awarded Papillion's keno operation.

## VI. LATE-DISCLOSED EVIDENCE

Finally, Null assigns as error the Court of Appeals' order
affirming the trial court's refusal to grant a continuance due to
the State's failure to disclose evidence until the first day of his
trial. All of the evidence objected to was in the form of tape-
recorded conversations between Null, Vogel, and Mayor
Goodman.

The tape recordings were a subject of discussion in chambers
on Monday, January 25, 1993, the date the trial began. Null's
counsel stated that he had understood that tape recordings of
three separate incidents would be introduced and protested the
introduction of a fourth set of tape recordings. The county
prosecutor stated that the existence of the tapes could have been
determined from the police reports and that defense counsel had
failed to ask for them during discovery. Defense counsel asked
for a continuance in order to gain time to listen to the tapes and
formulate a defense. The trial court denied the motion and
ordered the State to furnish copies of the tapes to the defendants
by 3 o'clock that afternoon. If the defendants determined that
the contents of the tapes justified a continuance or suppression,
then the trial court agreed to conduct a hearing the next morning
before resuming trial. Counsel proceeded to select a jury and

made their opening statements.

The next morning, Tuesday, another meeting was had in chambers regarding the tape recordings. Null's attorney stated that he had received 14 audiotapes at 5 o'clock Monday and that he had been able to listen to most of them. Null himself had not been able to listen to the tapes due to the time constraint. Counsel argued that it was virtually impossible to assess and digest the information on the tapes adequately and requested a continuance or, alternately, a mistrial. The trial court noted Null's "boilerplate" discovery requests and refused to grant a mistrial or a continuance. The trial court ordered the prosecutor to specifically identify the tapes that he intended to use and further ordered the prosecutor to avoid using any tapes prior to affording the defense the opportunity to listen them. The trial court instructed defense counsel to request continuances if they deemed it necessary after listening to any tape. No such continuances were requested. Further, Null offered no objection to the introduction of any of the tapes during trial on the basis of their late disclosure.

In his brief to the Court of Appeals, Null asserted that the trial court erred in refusing to grant a continuance. Null asserted that Neb. Rev. Stat. § 29-1912 (Reissue 1989) requires that the State make all evidence available to the defendant, upon request, prior to trial.

A prosecutor's duty to disclose evidence in response to a very general discovery request arises if the evidence contains obvious exculpatory characteristics. *State v. Tweedy*, 224 Neb. 715, 400 N.W.2d 865 (1987). The Court of Appeals stated that § 29-1912 provides the procedure for discovery in criminal cases. Under § 29-1912, the test for whether nondisclosure is prejudicial is whether the information sought is material to the preparation of the defense, meaning that there is a "strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal." *State v. Brown*, 214 Neb. 665, 674-75, 335 N.W.2d 542, 547 (1983).

Without condoning the State's failure to timely disclose the tapes, the Court of Appeals noted that Null had made no

showing, or even argument, of how his preparation for his own testimony or cross-examination of the State's witnesses was harmed by the late disclosure. Therefore, the Court of Appeals found no abuse of discretion in the trial court's denial of Null's motion to continue.

In his brief in support of his petition for further review, Null argues that he was in fact harmed by the late-disclosed tapes. Null states that the jury was selected before the defense had the opportunity to hear the tapes. Null claims that the new tapes contained much more profanity and sexist language than the previously disclosed tapes and that the county attorney had an advantage during the jury selection because he knew of their potentially prejudicial effect.

However, any prejudicial effect of the profanity and sexist language contained in the late-disclosed tapes was curable at trial. For example, defense counsel moved to suppress exhibit 12, one of the tapes, for the reason that it contained an offensive reference to African-Americans. One of the jurors was an African-American. The trial court ordered the offensive statement to be excised from the tape prior to its being played to the jury. At trial, Null did not offer any other objections or request that profane or sexist statements be excised from the tapes. On review from the Court of Appeals, we will not entertain such objections for the first time.

The trial court did not abuse its discretion in denying Null's motion to continue. The court ensured that defense counsel had the opportunity to hear the tape recordings prior to their use at trial. The trial court invited defense counsel to request a continuance if the need arose during the trial. The court ordered the excision of an offensive statement when requested. Therefore, Null fails to establish any prejudice due to the late disclosure.

## VII. CONCLUSION

Each of Null's assignments of error being without merit, the judgment entered by the Court of Appeals in affirming Null's convictions was proper, and it is, thereby, affirmed.

AFFIRMED.